UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>ANKIT PATEL,<br><br>Defendant.<br>_____/ | Case: 2:21-cr-20571<br>Judge: Michelson, Laurie J.<br>MJ: Patti, Anthony P.<br>Filed: 09-09-2021 At 03:16 PM<br>INDI USA VS PATEL (DP)<br><br>VIO: 18 U.S.C. § 371<br>42 U.S.C. § 1320a-7b<br>18 U.S.C. § 2<br>18 U.S.C. § 982 |

## INDICTMENT

THE GRAND JURY CHARGES:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

### The Medicare Program

1.  The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were 65 years of age or older or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

3. Medicare covered different types of benefits and was separated into different program "parts." "Part A" of the Medicare program covered certain eligible home health care costs for medical services provided by a home health agency ("HHA"), also referred to as a "provider," to persons who already qualified for Medicare and who additionally required home health services because of an illness or disability that caused them to be homebound.

4. National Government Services was the CMS intermediary for Medicare Part A in the state of Michigan starting in or around May 2015. AdvanceMed (now known as "CoventBridge") was the Zone Program Integrity Contractor ("ZPIC"), meaning the Medicare contractor charged with investigating fraud, waste, and abuse.

5. By becoming a participating provider in Medicare, enrolled providers agreed to abide by the policies and procedures, rules, and regulations governing reimbursement, and furthermore, certified that they would not knowingly present, or cause to be presented, false and fraudulent claims. In order to receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, were required to abide by all of the provisions of the Social Security

Act, the regulations promulgated under the Act, and applicable policies, procedures, rules, and regulations issued by CMS and its authorized agents and contractors.

6. Upon certification, the medical provider, whether a clinic, a HHA, or an individual, was assigned a provider identification number for Medicare billing purposes (referred to as an "NPI"). When the medical provider rendered a service, the provider submitted a claim for reimbursement to the Medicare contractor or carrier that included the NPI assigned to that medical provider.

7. In order to receive reimbursement for a covered service from Medicare, a provider was required to submit a claim, either electronically or using a form (e.g., a CMS-1500 form or UB-92) containing the required information appropriately identifying the provider, patient, and services rendered.

8. Health care providers were given, and provided with online access to, Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations. Providers could only submit claims to Medicare for services they rendered, and providers were required to maintain patient records to verify that the services were provided as described on the claim form. These records were required to be sufficient to permit Medicare, through its contractors, to review the appropriateness of Medicare payments made to the health care provider.

9. Medicare only covered services that were both medically necessary and rendered.

10. Medicare only covered home health services, if, on the claimed dates of service:

a. the Medicare beneficiary was under the care of a doctor and receiving services under a plan of care established and reviewed regularly by a doctor;

b. the Medicare beneficiary needed, and a doctor certified that the beneficiary needed, one or more of the following: (i) Intermittent skilled nursing care; (ii) Physical therapy; (iii) Speech-language pathology services; or (iv) Continued occupational therapy;

c. the HHA must have been approved by Medicare (Medicare-certified); and

d. the Medicare beneficiary was homebound, and a doctor certified that the Medicare beneficiary was homebound.

### Federal Anti-Kickback Statute Compliance

11. As a requirement to enroll as a Medicare provider, Medicare required providers to agree to abide by Medicare laws, regulations, and program instructions. Medicare further required providers to certify that they understood that a payment of a claim by Medicare was conditioned upon the claim and the underlying transaction complying with these laws, regulations, and program instructions,

including the Federal Anti-Kickback Statute. Accordingly, Medicare would not pay claims procured through kickbacks and bribes.

### The Relevant Home Health Agency

12. Perfect Home Health Care Services, LLC ("Perfect") was a Michigan company doing business at 31700 West 13 Mile Road, Suite 110, Farmington Hills, Michigan 48334. Perfect was enrolled as a participating Medicare provider and submitted claims to Medicare. Perfect was a home health agency that purportedly provided in-home physical therapy and skilled nursing services to patients.

### The Defendant and Related Individuals

13. Defendant ANKIT PATEL was a resident of Oakland County, Michigan, and owned and operated Perfect.

14. Assayyid Yufenu was a resident of Oakland County, Michigan, and was a patient recruiter for Perfect.

15. Individual 1 was a resident of Macomb County, Michigan, and was a patient recruiter for Perfect.

### Count 1
### Conspiracy to Pay and Receive Health Care Kickbacks
### (18 U.S.C. § 371)

16. Paragraphs 1 through 15 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

5

17. From at least in or around July 2016, and continuing through in or around February 2021, the exact dates being unknown, in Oakland County, in the Eastern District of Michigan, and elsewhere, ANKIT PATEL, Assayyid Yufenu, Individual 1 did knowingly and willfully conspire and agree with each other and others, known and unknown, to commit certain offenses against the United States, that is,

   a. to violate Title 42, United States Code, Section 1320a-7b(b)(1)(A), by soliciting and receiving any remuneration (including any kickback, bribe, and rebate) directly and indirectly, overtly and covertly, in cash and in kind, in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by Medicare, a Federal health care program as defined in Title 18, United States Code, Section 24(b); and

   b. to violate Title 42, United States Code, Section 1320a-7b(b)(2)(A), by offering and paying any remuneration (including any kickback, bribe, and rebate) directly and indirectly, overtly and covertly, in cash and in kind in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by Medicare, a Federal

6

health care program as defined in Title 18, United States Code, Section 24(b).

**Purpose of the Conspiracy**

18. It was a purpose of the conspiracy for the defendant and his co-conspirators to unjustly enrich themselves by: (1) offering, paying, soliciting, and receiving kickbacks and bribes in return for Medicare beneficiary referrals; and (2) submitting and causing the submission of claims to Medicare for purported home health services provided to those recruited Medicare beneficiaries.

**Manner and Means of the Conspiracy**

19. The manner and means by which the defendant and his co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things, the following:

20. ANKIT PATEL and others paid and caused the payment of illegal kickbacks and bribes to Assayyid Yufenu, Individual 1, and others in exchange for referring Medicare beneficiaries to Perfect, and providing Medicare beneficiary information to PATEL that PATEL and others used to support the submission of claims to Medicare, through Perfect, for purported home health care services.

21. ANKIT PATEL, Assayyid Yufenu, Individual 1, and others disguised and concealed the kickbacks and bribes paid by Perfect to Assayyid Yufenu,

Individual 1, and others through sham contracts, false invoices, and the creation of sham W-2 employees.

22. ANKIT PATEL paid kickbacks and bribes to Assayyid Yufenu, Individual 1 and others from an account held by Perfect at J.P. Morgan Chase, ending in x1800 ("Perfect Account"), in exchange for recruiting and referring Medicare beneficiaries to Perfect.

## Overt Acts

23. In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one of the conspirators committed, or caused to be committed, in the Eastern District of Michigan, at least one of the following overt acts, among others:

24. On or about June 15, 2018, Yufenu sent ANKIT PATEL a text message about receiving payment for the referral of Medicare beneficiaries to Perfect.

25. On or about June 18, 2018, ANKIT PATEL paid and caused the payment of approximately $700 to Assayyid Yufenu, in the form of check number 0356, drawn on the Perfect Account, in exchange for referring a Medicare beneficiary and providing Medicare beneficiary information.

26. On or about January 11, 2021, ANKIT PATEL paid and caused the payment of approximately $350 to Individual 1, in the form of an electronic payment via Zelle, payment ID# JPM509447232, drawn on the Perfect Account, in exchange

for referring a Medicare beneficiary and providing Medicare beneficiary information.

All in violation of Title 18, United States Code, Section 371.

## Counts 2-5
### 42 U.S.C. § 1320a-7b(b)(2)(A)—Payment of Kickbacks and Bribes in Connection with a Federal Health Care Program

27. Paragraphs 1 through 15 and 18 through 26 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

28. On or about the dates set forth below, in Oakland County, in the Eastern District of Michigan, and elsewhere, ANKIT PATEL, did knowingly and willfully offer and pay remuneration, that is, kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, including by check, to any person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare, as set forth below:

| Count | Approximate Date of Payment | Description | To | From | Approximate Amount |
|---|---|---|---|---|---|
| 2 | June 18, 2018 | Check No. 0356 | Yufenu | PATEL | $700 |

9

| Count | Approximate Date of Payment | Description | To | From | Approximate Amount |
|---|---|---|---|---|---|
| 3 | June 25, 2018 | Check No. 0359 | Yufenu | PATEL | $2,100 |
| 4 | March 11, 2019 | Check No. 0483 | Yufenu | PATEL | $700 |
| 5 | January 11, 2021 | Zelle PMT ID# JPM509447232 | Individual 1 | PATEL | $350 |

Each in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A), and Title 18, United States Code, Section 2.

## FORFEITURE ALLEGATIONS

### (18 U.S.C. § 982(a)(7) - Criminal Forfeiture)

29. The allegations contained in this Indictment are incorporated by reference as if set forth fully herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 982.

30. As a result of the violations alleged in Counts 1 through 5, as set forth in this Indictment, Defendant ANKIT PATEL shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or

10

personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, including but not limited to:

- Approximately $1,514.22 seized from JP Morgan Chase Bank account number 3635165088 held in the name of Perfect.

31. Money Judgment: Such property includes, but is not limited to, a forfeiture money judgment against Defendant ANKIT PATEL in an amount to be determined, representing the total value of all property subject to forfeiture as a result of his violation(s) of Title 18, United States Code, Sections 371, and Title 42 United States Code, Section 1320a, as alleged in Counts 1 through 5 of this Indictment.

32. Substitute Assets: If the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

a. Cannot be located upon the exercise of due diligence;

b. Has been transferred or sold to, or deposited with, a third party;

c. Has been placed beyond the jurisdiction of the Court;

d. Has been substantially diminished in value; or

e. Has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), to seek to

forfeit any other property of Defendant ANKIT PATEL up to the value of the forfeitable property described above.

THIS IS A TRUE BILL.

s/Grand Jury Foreperson
Grand Jury Foreperson

SAIMA S. MOHSIN
Acting United States Attorney

REGINA R. MCCULLOUGH
Chief, Health Care Fraud Unit
Assistant United States Attorney
211 W. Fort St., Suite 2001
Detroit, MI 48226
(313) 226-9618
regina.mccullough@usdoj.gov

JOSEPH S. BEEMSTERBOER
Acting Chief
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue, N.W.
Washington, D.C. 20005

 s/John J. McCormack
JOHN J. MCCORMACK
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue, N.W.
Washington, D.C. 20005
(202) 262-7011
John.mccormack.iv@usdoj.gov

Date: September 9, 2021

| United States District Court<br>Eastern District of Michigan | **Criminal Case Cover Sheet** | Case Number |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

| **Companion Case Information** | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: |
| ☐ Yes    ☒ No | AUSA's Initials: |

**Case Title:** USA v. Ankit Patel

**County where offense occurred :** Oakland

**Check One:**    ☒ Felony    ☐ Misdemeanor    ☐ Petty

✓ Indictment/____Information --- **no** prior complaint.
____Indictment/____Information --- based upon prior complaint [Case number:                    ]
____Indictment/____Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

**Superseding Case Information**

**Superseding to Case No:** _____    **Judge:** _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|

Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.

September 9, 2021
Date

John J. McCormack, Trial Attorney
211 West Fort Street, Detroit, MI 48226
Phone: 202-262-7011
Fax:   (313) 226-0816
E-Mail address: John.McCormack.IV@usdoj.gov
Attorney Bar #: MA 676073, NH 19569

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.